IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| WILLIAM LEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:20-CV-00058-BU |
| NICOLE MCGUIRE, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff William Lee brings this action under 42 U.S.C. § 1983 against defendants Nicole McGuire, Patsy Villa, George Gutierrez, Allison Payne, and WTC MHMR Company (collectively, "Defendants") alleging that they violated his constitutional rights. Defendants have all filed motions for summary judgment, with the individual defendants asserting qualified immunity. Dkt. Nos. 78, 81, 83. For the reasons below, the undersigned RECOMMENDS that the Court: (1) GRANT qualified immunity and summary judgment to Villa, Gutierrez, and Payne; (2) GRANT summary judgment to WTC; and (3) DENY qualified immunity and summary judgment to McGuire.

## I.  JURISDICTION

Lee brings this action under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Venue is proper in the Abilene Division of the Northern District of Texas because the events giving rise to Lee's claims occurred in or

1

near Big Spring, Texas, and at least one of the Defendants resides within the Abilene Division. *See* Dkt. No. 63. The undersigned has the authority to enter these Findings, Conclusions, and Recommendations (FCR) after United States District Court Judge James Wesley Hendrix transferred Lee's case to the undersigned for judicial screening under 28 U.S.C. §§ 1915, 1915A. Dkt. No. 6; 28 U.S.C. § 636(b)(1)(B).

## II. FACTUAL BACKGROUND[1]

The facts construed in Lee's favor are as follows. Lee suffers from several mental health disorders, one being schizophrenia which causes him to hear voices in his head. Dkt. No. 63 at 3. In late 2017 or early 2018, Lee attempted suicide, and following this attempt, he checked into a WTC crisis respite center (hereinafter, "the Center") located in Big Spring for in-patient mental health treatment. *Id.*; Dkt. No. 12 at 3.

WTC is a certified community center created under Chapter 534 of Texas's Health and Safety Code that offers services for individuals with mental health disorders or developmental disabilities in 23 counties, including Howard County, where the Center is located. Dkt. No. 85 at 8, 81–83. In September 2018, WTC entered into a Provider Service Agreement (PSA) with a third party—The Wood Group Investments, Ltd. (TWG)—for staffing at the Center. *Id.* at 9; *see also id.* at 84–103. Patients at the Center receive room and board, meals, monitoring, occupational assistance, and transportation to certain appointments and

---

[1] Although Lee's Response to the Motions lacks competent summary judgment evidence, the undersigned has accepted his sworn statements in his Amended Complaint (Dkt. No. 63; *see also* Dkt. No. 96), responses to the Court's questionnaires (Dkt. Nos. 12, 26), and attachments to his original Complaint but referenced in his Amended Complaint (Dkt. No. 2 at 8–9) as proper evidence under Rule 56. *See Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex. 1996); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). The undersigned has not considered statements in Lee's original Complaint. *See Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996).

activities. *See id.* at 100.

Lee arrived at the Center from another state facility in early-to-mid January 2018 and stayed there until May 20, 2018. Dkt. No. 12 at 3. He says that the previous state facility had recommended the Center because it would offer mental health care services he would otherwise be unable to receive on his own and help him with housing, food, and medication. *Id.* Lee returned to the Center in August or September 2018 where he remained until on or about January 7, 2019. *Id.* Lee claims that while residing at the Center, he was not permitted to leave the facility without supervision. Dkt. No. 63 at 3.

During his second stint at the Center, Lee was walking behind Nicole McGuire—at the time, a Peer Provider employed by TWG—who asked him if "he liked what he saw." *Id.* Following this comment, McGuire went out of her way to ensure that she could drive Lee to and from his job at a local restaurant. *Id.* On one of these occasions, McGuire unzipped Lee's pants and—over his objections—proceeded to have sex with him.[2] *Id.* at 4.

As told by Lee, this was not an isolated incident. He claims that McGuire would regularly drive him to and from the Center for work and other appointments and, along the way, pull the car over to engage in oral sex. Dkt. No. 12 at 1–2. Similar sexual encounters occurred at various locations, including in his room at the Center. *Id.* Lee describes several of these encounters in more detail. *See id.* at 1–3; Dkt. No. 63 at 3–5. For instance, on one occasion when Lee had a weekend pass that allowed him to be outside of the Center,

---

[2] Lee's Amended Complaint states that this abuse began in early 2018, however, his responses to the Court's questionnaires are clear that the abuse he alleges occurred during his second stay at the Center. *Compare* Dkt. No. 63 at 3–4, *with* Dkt. No. 12 at 1.

McGuire picked him up and took him back to her home. Dkt. No. 12 at 1. Once there, McGuire brought out sex toys and inserted one into his anus. *Id.* at 3.

Lee told McGuire multiple times that he did not want to have sex with her—telling her he "didn't like her like that" or it "wasn't something he wanted to do." Dkt. Nos. 63 at 4; 12 at 14. Another time, Lee claimed to be unable to get an erection to avoid having sex with her. Dkt. Nos. 63 at 5; 12 at 14. McGuire responded by forcing his head between her legs for oral sex. Dkt. No. 63 at 5.

Lee does not allege that McGuire used physical coercion or overt threats; however, he claims that her position at WTC gave her access and control over patients' social security benefit cards. Dkt. No. 12 at 4. He also says that she took advantage of his disabilities to manipulate him to perform sexual acts and not report her conduct. *Id.* at 14–15.

Shortly after these encounters began, Lee told Patsy Villa—an assistant administrator employed by TWG—about the sexual abuse while the two were driving in a car. *Id.* at 10; Dkt. No. 63 at 4. Villa then asked Lee if he cared about McGuire and told him that, if he did, "[he] should keep quiet or [McGuire] will lose her job or go to jail." Dkt. Nos. 12 at 10 (cleaned up in part); 63 at 4. Villa never reported McGuire's conduct or otherwise acted to prevent her from continuing to abuse Lee. Dkt. Nos. 12 at 10–11; 63 at 4.

Lee also claims that on or about February 7–9, 2019, another patient told Gutierrez—an administrator employed by TWG—of McGuire's conduct. Dkt. No. 12 at 7. Although Gutierrez asked McGuire whether she was having sex with Lee—which she denied—he did nothing else to investigate further into her conduct. *Id.* at 8.

Finally, Lee says Allison Payne—McGuire's supervisor and a WTC employee—

4

also became aware of McGuire's actions in October 2019, but that she too failed to take steps to investigate or remedy the situation. Dkt. No. 63 at 6.

### III.  PROCEDURAL HISTORY

#### A.    Case History

Lee filed suit on March 26, 2020. Dkt. No. 1. The Court screened Lee's claims under 28 U.S.C. §§ 1915, 1915A and found that he had managed to state a claim against each defendant. *See* Dkt. No. 29. Specifically, the Court found Lee had plausibly alleged a bodily integrity claim under the Fourteenth Amendment's Due Process Clause against McGuire. *Id.* at 7–11. The Court also found Lee had plausibly alleged failure-to-protect claims under the Fourteenth Amendment against Villa, Gutierrez, and Payne. *Id.* at 11–22. Finally, the Court found a plausible claim against WTC based on a potential policy or practice of failing to act on allegations of sexual abuse. *Id.* at 22–26.

After ordering service, the Court administratively stayed and closed this case to find counsel to represent Lee. Dkt. No. 31. The Court appointed counsel and granted Lee leave to amend. Dkt. Nos. 37, 43. Soon after, Lee's attorneys lost contact and were unable to locate him. They then sought extensions of the time to file an amended complaint. Dkt. Nos. 46, 48. After additional attempts to reach Lee proved unsuccessful, his attorneys asked to withdraw, which the Court granted. Dkt. Nos. 50, 51.

Lee later resurfaced to respond to the Court's order to show cause and asked the Court to accept an Amended Complaint. Dkt. Nos. 58, 59. The Court granted leave to amend and ordered Defendants to respond. Dkt. No. 62. Defendants filed answers, all of which included the affirmative defense of qualified immunity in the case of the individual

defendants and sovereign and governmental immunity in the case of WTC. Dkt. Nos. 64 at 5–6 (McGuire); 65 at 8 (Villa and Gutierrez); 70 at 7–8 (Payne and WTC).

The Court then ordered Defendants to file a notice indicating whether they would file pre-discovery motions invoking immunity or wished to proceed to discovery. Dkt. No. 71. Defendants responded that they wished to "proceed with discovery limited to issue [sic] relevant to the qualified immunity defenses asserted by Defendants." Dkt. No. 74. But that same day, Defendants filed a Motion stating that "[i]n the present case, there is no reason to think that discovery will result in anything but additional cost and inconvenience." Dkt. No. 75 at 5. And Defendants "respectfully request that this Court stay all discovery in this case pending the Court's ruling on Defendants' Motions." *Id.*

Because it was unclear whether Defendants consented to limited discovery on the issue of qualified immunity, or instead sought a stay of all discovery, the Court set deadlines for the filing and briefing of Defendants' assertions of qualified immunity and stayed all discovery pending the Court's resolution of the motions. Dkt. No. 76.

### B.    Defendants' Motions

McGuire, Villa, Gutierrez, and Payne all seek summary judgment on the ground that they are entitled to qualified immunity. Dkt. Nos. 78–80 (Villa and Gutierrez); 81–82 (McGuire); 83–85 (Payne).

In its Amended Answer, WTC did not assert qualified immunity, but raised sovereign immunity or, in the alternative, governmental immunity under Chapter 101 of the Texas Civil Practice & Remedies Code. Dkt. No. 70 at 7. WTC fails to mention these defenses in its Motion, *see* Dkt. Nos. 83, 84, but it does argue that Lee has not furnished

6

sufficient evidence for a *Monell* claim against it.[3] *See* Dkt. No. 84 at 19–25.

## IV.  LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020). The moving party "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). Thus, the moving party must "identify those portions of [the record] which it believes demonstrate [that] absence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In evaluating a summary-judgment motion, the Court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "[A] fact is 'material' if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (citation and quotation marks omitted). A dispute is not

---

[3] The undersigned will assess WTC's argument for summary judgment in the section analyzing the first prong of qualified immunity.

genuine if the facts being asserted are "blatantly contradicted by the record so that no rea-sonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Court must consider materials cited by the parties, but it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 does not impose a duty on the Court to "sift through the record in search of evidence" to support the non-movant's opposition to the motion for summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992)).

"[I]f the movant bears the burden of proof on an issue, either because he is the plain-tiff or [ ] a defendant . . . asserting an affirmative defense, he must establish beyond perad-venture all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923–24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitz-water, J.)).

Once the movant has satisfied this burden, the burden shifts to the nonmovant to demonstrate that a genuine issue of material fact does exist and that the evidence, viewed in favor of the nonmovant, permits a jury verdict for the nonmovant. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020). The nonmovant must "go beyond the plead-ings" and produce evidence showing that there is a genuine issue of fact. *Celotex*, 477 U.S. at 324. However, the non-moving party cannot overcome its burden by merely alleging

legal conclusions or unsubstantiated assertions; instead, it must present affirmative evidence that supports the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[T]he purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

### B.    Qualified Immunity

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). In deciding whether a defendant is entitled to qualified immunity, courts consider: "(1) [whether] the official violated a statutory or constitutional right, and (2) [whether] the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021).

### V.    ANALYSIS

Before addressing the two prongs of qualified immunity, the undersigned must determine whether the individual Defendants can assert the defense in the first place. *See Perniciaro v. Lea*, 901 F.3d 241, 251 (5th Cir. 2018).

### A.    McGuire, Villa, Gutierrez, and Payne may assert qualified immunity.

Payne is an employee of WTC, which was created in accordance with Chapter 534 of Texas's Health and Safety Code. Under this Chapter, "[a] county, municipality, hospital district, or school district, or an organizational combination of two or more of those local agencies, may establish and operate a community center." § 534.001(a). Subsection (c)

9

provides that a community center is "an agency of the state, a governmental unit, and a unit of local government" for purposes of state law.[4] With this designation, the undersigned finds that Payne may assert qualified immunity.

McGuire, Villa, and Gutierrez, though, are not employed by WTC, but by TWG and serve as contractors for WTC under the PSA. As shown below, this is a distinction without a difference, at least for purposes of qualified immunity.

Whether a private individual may assert qualified immunity depends on "(1) principles of tort immunities and defenses applicable at common law around the time of § 1983's enactment in 1871 and (2) the purposes served by granting immunity." *Perniciaro*, 901 F.3d at 251 (citing *Filarsky v. Delia*, 566 U.S. 377, 383–84 (2012); *Richardson v. McKnight*, 521 U.S. 399, 403–04 (1997)).

In *Filarsky*, the Supreme Court noted that common law courts "did not draw a distinction between public servants and private individuals engaged in public service in according protection to those carrying out government responsibilities." 566 U.S. at 387. It concluded that "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis[.]"

---

[4] The Fifth Circuit found a community center created under the statutory predecessor to Chapter 534 to be more akin to a municipality than an arm of the state. *Farias v. Bexar Cnty. Bd. of Trs. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 874–75 (5th Cir. 1991) (citing *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cnty., Tex.*, 752 F.2d 1063, 1072 (5th Cir. 1985)); *see also* Tex. Rev. Civ. Stat. Ann. art. 5547–203 § 3.01(c) (Vernon Supp. 1990). And courts have reached the same conclusion even after Texas enacted Chapter 534. *See Willrich v. Ctr. for Health Care Servs.*, No. CIV.A. SA06CA958XR, 2007 WL 1300470, at *2 (W.D. Tex. May 3, 2007); *Whitehead v. Johnson Cnty. Mental Health & Mental Retardation Ctr.*, No. CIV.A.3:95-CV-2118-G, 1997 WL 74714, at *1 (N.D. Tex. Feb. 12, 1997); *Brooks v. Ctr. for Healthcare Servs.*, 981 S.W.2d 279, 287 (Tex. App.—San Antonio 1998, no pet.); *see also Johnson v. MHMR Auth. of Brazos Valley*, No. CV H-23-3448, 2023 WL 8630064, at *3 (S.D. Tex. Dec. 13, 2023).

*Id.* at 389. Thus, it is irrelevant that McGuire, Gutierrez, and Villa are not employed by a government agency.

Turning then to the purposes of qualified immunity, the Supreme Court has identified three interests: "(1) preventing unwarranted timidity in the exercise of official duties; (2) ensuring that highly skilled and qualified candidates are not deterred from public service by the threat of liability; and (3) protecting public employees—and their work—from all of the distraction that litigation entails." *Perniciaro*, 901 F.3d at 253 (citing *Filarsky*, 566 U.S. at 388–89; *Richardson*, 521 U.S. at 407–12).

In *Perniciaro*, the Court found that all three purposes would be furthered by extending the ability to invoke the defense to two psychiatrists who were employed by a university but worked in a state-run facility. *Id.* at 252–55. The Court noted that "where private individuals work alongside public employees, the interest in extending qualified immunity to those individuals is far greater." *Id.* at 255. While the facts of *Perniciaro* differ slightly from those here, those differences are immaterial in light of the fact that McGuire, Villa, and Gutierrez were private contractors working alongside public employees. Therefore, the undersigned finds that the purposes of extending qualified immunity are furthered for largely the same reasons stated in *Perniciaro*.

**B.    The facts and reasonable inferences drawn in Lee's favor would permit a reasonable jury to find that McGuire and Villa have violated his constitutional rights; however, there is insufficient evidence to find a constitutional violation by Gutierrez, Payne, or WTC.**

The first prong of qualified immunity requires the plaintiff to allege and prove facts that establish a violation of their constitutional rights. *Pearson v. Callahan*, 555 U.S. 223,

232 (2009). To state a claim under 42 U.S.C. § 1983, Lee must "allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). Here, Lee alleges that McGuire violated his right to bodily integrity under the Fourteenth Amendment's Due Process Clause. As for the other defendants, Lee alleges that they failed to protect him from McGuire's actions in violation of the same provision.

### 1.    *McGuire*

"The substantive component of the Due Process Clause under the Fourteenth Amendment secures the 'right to be free of state-occasioned damage to a person's bodily integrity.'" *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc) (hereinafter, "*Taylor ISD*")). The Fifth Circuit has consistently found that physical sexual abuse by a state official violates the right to bodily integrity. *See id.* at 517–19; *United States v. Guidry*, 456 F.3d 493, 506 n.7 (5th Cir. 2007); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995) (hereinafter, "*Rains Cnty. ISD*"); *Taylor ISD*, 15 F.3d at 450–51.

Taking Lee's sworn statements as true, McGuire engaged in a pattern of nonconsensual sexual abuse that sufficiently implicates Lee's right to bodily integrity. *Tyson*, 42 F.4th at 518 (finding depute violated plaintiff's right to bodily integrity by ordering her to strip and expose her genitals while he masturbated to her naked body).

Further, the undersigned has little trouble concluding that this abuse occurred under the color of state law. Not all sexual abuse by a state official is actionable under § 1983,

12

there must be a "real nexus" between "the activity out of which the violation occurs and the [defendant's] duties and obligations" as a government actor. *Taylor ISD*, 15 F.3d at 452 n.4 (citation omitted). Lee describes how McGuire used her position to find opportunities to be alone with him and to then engage in sexual acts; he even claims that McGuire abused him inside his room at the Center; thus, there was a sufficient nexus here. *See Bennett v. Pippin*, 74 F.3d 578, 589 (5th Cir. 1996) (holding that a sheriff acted under color of law when he questioned the suspect of a criminal investigation on the porch of her home then allegedly returned later in the evening and sexually assaulted her).

While Lee does not allege that McGuire used physical force or overt threats of bodily harm, the Fifth Circuit has made clear that physical harm or threats thereof are not necessary to establish a bodily integrity claim. *Tyson*, 42 F.4th at 518–19 ("Physical force is not a requirement of a violation of the right to bodily integrity. Substantive due process violations can be based on mental coercion alone.") (citations omitted). The undersigned finds it sufficient at this stage that Lee was a schizophrenic mental health patient recovering from recent suicide attempts and was being abused by one of his care providers.[5]

Accordingly, the evidence construed in Lee's favor demonstrates that McGuire violated his right to bodily integrity.

### 2. *Villa*

Lee alleges that Villa and others failed to protect him from McGuire after they became aware of her conduct. Failure-to-protect claims ordinarily fall into one of two

---

[5] Lee also alleges that McGuire maintained control over parts of his finances and the Center was the only facility where he could get the care recommended for him.

categories: those involving harm caused by a non-government third party and those involving harm at the hands of a government actor. For the first category, the law requires a special relationship between the victim and the government for a duty to protect to arise. *See Lefall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 526 (5th Cir. 1994) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197–200 (1989)).

This case falls into the latter category, which does not require a special relationship; rather, when a plaintiff suffers sexual abuse or faces a risk of abuse at the hands of a government officer, the Fourteenth Amendment requires that other officers not be deliberately indifferent towards that risk. *Taylor ISD*, 15 F.3d at 454. To prevail on such a claim, a plaintiff must show that: (1) the defendant "knew of a pattern of constitutional deprivations;" (2) "the abuse was caused by a state actor over whom [the defendant] had supervisory authority or a state-law created right of legal control;" (3) the defendant's "failure to act demonstrated deliberate indifference to the victim's constitutional rights;" and (4) the "failure to act resulted in a constitutional injury." *Whitley v. Hanna*, 726 F.3d 631, 640 (5th Cir. 2013).

*Awareness of constitutional violations*. Lee alleges that he told Villa of McGuire's abuse shortly after it had started. Although it is not completely clear what Lee told Villa, her response that "[he] should keep quiet or [McGuire] will lose her job or go to jail" suggests she understood McGuire's actions were wrong and possibly unlawful. Dkt. No. 12 at 10 (cleaned up in part). These facts and reasonable inferences therefrom, taken as true, are sufficient to show Villa's awareness of a pattern of constitutional violations.

*Supervisory authority*. Lee describes Villa's role at the Center as an "assistant

14

administrator" who oversees patients. Dkt. No. 12 at 12. Beyond this, there is no other evidence describing Villa's authority and responsibilities, or her position in relation to McGuire's. But given that McGuire held a lower-level care position at the Center, there is at least a genuine issue of material fact as to whether Villa held supervisory authority over her.[6]

_Deliberate indifference_. "Deliberate indifference is an extremely high standard to meet." _Domino v. Texas Dep't of Crim. J._, 239 F.3d 752, 756 (5th Cir. 2001). A state official acts with deliberate indifference when she "knows that [plaintiff] face[s] a substantial risk of serious bodily harm" and she "disregards that risk by failing to take reasonable measures to abate it." _Gobert v. Caldwell_, 463 F.3d 339, 346 (5th Cir. 2006). A finding of deliberate indifference requires more than mere negligence—the state official must: (1) be subjectively aware that the plaintiff faces a substantial risk of serious harm; and (2) disregard that risk by failing to take reasonable measures to alleviate it. _See Farmer v. Brennan_, 511 U.S. 825, 837 (1994). Thus, the state official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." _Id._

Taken as true, the statement Lee attributes to Villa demonstrates that she recognized the substantial risk of harm facing Lee and the wrongfulness of McGuire's conduct. But

---

[6] The undersigned notes that the authority and responsibilities of an assistant administrator are likely context-specific and therefore unique for each company or organization. Merriam-Webster defines administrator as "one who administers especially business, school, or governmental affairs" and administer as "to manage or supervise the execution, use, or conduct of." Merriam-Webster, _Administrator_, https://www.merriam-webster.com/dictionary/administrator (last accessed July 18, 2024); Merriam-Webster, _Administer_, https://www.merriam-webster.com/dictionary/administer (last accessed July 18, 2024);

rather than report McGuire's conduct or act in a way to prevent her from continuing to engage in what Villa already believed to be unlawful behavior, Villa suggested that Lee remain quiet. This is a quintessential example of deliberate indifference.

_Resulted in constitutional injury_. Lee alleges that he told Villa of McGuire's abuse soon after it began. Lee maintains that once McGuire began her abuse, it continued for the duration of his second stay at the Center, _i.e._, until at least January 7, 2019. Under this timeline, Lee has shown that Villa's deliberate indifference and failure to act caused or contributed to the harm he suffered as a result of McGuire's continued abuse.

Accordingly, the undersigned finds that the evidence drawn in Lee's favor would allow a jury to find that Villa's actions violated his right under the Fourteenth Amendment.

### 3. *Gutierrez*

Using the same framework, though, Lee cannot maintain a claim against Gutierrez. Lee is adamant that Gutierrez first became aware of McGuire's abuse when another patient mentioned it to him in February 2019. Dkt. No. 12 at 7. Lee's insistence on this date is critical because Lee left the Center on January 7, 2019. *Id.* at 3. By his own admission then, unlike Villa, Gutierrez did not become aware of McGuire's abuse until several weeks *after* Lee had already left his observation and care.

Taking this one step further, there are no facts demonstrating that Gutierrez was subjectively aware that Lee still faced harm when he learned of McGuire's alleged conduct in February 2019. So even if Gutierrez exhibited deliberate indifference, Lee has failed to show that this deliberate indifference resulted in him suffering additional constitutional harm. Thus, Gutierrez is entitled to qualified immunity and summary judgment for the

claim against him.

### 4.    *Payne*

Lee's claim against Payne fails for the same reasons. Lee alleges that McGuire had confided in Payne about her sexual relationship with him. His entire basis for this allegation is an October 30, 2019, letter he received from McGuire where she writes:

> I also had a meeting with my boss. Was a little worried about it but overall it went well. I'm reassured in that I can go to, talk, and confide in my boss! Not too many bosses understand the way she does and let you breakdown in her office and then talk with you and help come up with solutions on taking care of myself (self-care), work issues, and even home (with my daughter) advice!

Dkt. No. 2 at 8 (cleaned up); *see also* Dkt. No. 12 at 5. Initially, the undersigned does not interpret these statements in the way Lee seems to: Nowhere does McGuire explicitly or implicitly say that she mentioned her and Lee's relationship to Payne. Because of this, the undersigned is also unable to assess what Payne may have learned at the meeting. Lee's inference that this meeting included a discussion of McGuire's sexual abuse of him is not, based on these facts, reasonable and amounts to no more than unsupported speculation. Lee has failed to demonstrate a genuine issue of fact about whether Payne knew of McGuire's pattern of constitutional deprivations and then failed to act in response.

But even if the undersigned were to read the letter in the way Lee suggests, he admits that he is not aware of when the meeting between McGuire and Payne occurred. Instead, he guesses, saying, "so make it a week before that letter and that's the date I'll use, 'around' October or November 2019." Dkt. No. 12 at 5. The undersigned also reads McGuire's letter to suggest that she met with Payne close to the date when the letter was written—approximately October 2019. But this date means that Lee's claim against Payne fails for the same

17

reason as the claim against Gutierrez: Payne was not aware of McGuire's behavior until Lee had already left the Center.

Accordingly, Lee's claim against Payne fails to overcome the first prong of qualified immunity.

### 5.    *WTC*

The undersigned finds that WTC is best viewed as a municipality for purposes of § 1983. *See* fn. 4 *supra*. This requires Lee to demonstrate the elements set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Marshall v. Webre*, No. 23-1319, 2023 WL 5956745, at *2–5 (E.D. La. Sept. 13, 2023) (collecting cases and assessing plaintiff's claim against private healthcare company who provided medical services for parish jail under *Monell* framework).[7]

To hold a municipality liable under Section 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc) (citations omitted). Notably, the Supreme Court has expressly rejected *respondeat superior* liability under § 1983, including in the context of municipal liability, because of the statutorily required actual culpability—versus constructive or vicarious culpability. *Monell*, 436 U.S. at 693; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997).

---

[7] WTC also assesses the claim against it under *Monell*. Dkt. No. 84 at 19–25.

An "official policy" may take the form of a formal policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmakers or by an official to whom the lawmakers have delegated policymaking authority. *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003). In addition, an official policy may also be in the form of "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that," in effect, "fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam). In such cases, the custom or practice has the "force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

But to establish a particular practice as widespread or persistent enough as to amount to a policy for Section 1983 purposes, a plaintiff must show that there was "a pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001). Typically, a single "act is not itself a custom." *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). Isolated violations are not usually viewed as the "persistent, often repeated, constant violations, that constitute custom and policy" as required for municipal section 1983 liability. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984).

Finally, in limited circumstances, "[o]ne way of establishing liability is to show that a policymaker ratified the acts of a subordinate." *Young v. Bd. of Supervisors of Humphreys Cnty., Miss.*, 927 F.3d 898, 903 (5th Cir. 2019). However, this theory is limited to "extreme factual situations." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

19

And "unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

At the outset, it is necessary to identify who holds policymaking authority at WTC. *See Piotrowski*, 237 F.3d at 578–79 (discussing how proper identification of a policymaker is necessary for determining which actions can be attributed to the government itself). Although Lee claims that Villa, Gutierrez, and Payne held policymaking authority, *see* Dkt. No. 63 at 2, he provides no evidence in support of that bald assertion. For its part, WTC furnishes evidence that the Board of Trustees is solely responsible for promulgating policies within WTC. Dkt. No. 85 at 8–9, 76. And there is no evidence that the Board has delegated policymaking authority to the individual defendants here.

Focusing then on the Board's actions, it is apparent that Lee cannot show the existence of an unconstitutional policy responsible for his injuries. To start, Lee has not directed the Court to a formal policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by the Board. Nor can he show a widespread or persistent practice that can take the form of an official policy. At most, he has shown that McGuire abused him over the course of several months and that a single individual working at WTC failed to protect him from that abuse. This is not a pattern. Lee has not pointed to other instances of sexual abuse or failures to protect patients from similar harm, whether on the parts of McGuire and Villa or anyone else at WTC. And above all, Lee has not shown that the Board was aware of his abuse or that another person at WTC looked the other way. *But see* Dkt.

20

No. 85 at 4.

Accordingly, Lee has failed to demonstrate a triable issue on any of the elements for a *Monell* claim against WTC.

### C.     The undersigned finds that Lee's right to bodily integrity was clearly established in 2018, but his right to protection was not.

The second prong of qualified immunity necessitates that a plaintiff show that their constitutional right was clearly established at the time it was violated. A constitutional right is clearly established "only if 'the contours of the right were sufficiently clear that a reasonable official would understand that what he was doing violated that right.'" *Perniciaro*, 901 F.3d at 255 (brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Ordinarily, a right becomes clearly established when existing precedent has "placed the statutory or constitutional question beyond debate." *Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017). A court must ensure that it does not "define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. So, although the law does not require a case similar in every respect, clearly established law "must be particularized to the facts of the case." *Arzabala v. Weems*, No. 5:21-CV-00268-H, 2024 WL 1018530, at *5 (N.D. Tex. Mar. 8, 2024) (Hendrix, J.) (citing *White v. Pauly*, 580 U.S. 73, 79–80 (2017)). There are, though, rare instances where "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018); *see also Darden*, 880 F.3d at 727.

And even if the official's conduct violated a clearly established constitutional right,

the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable under the circumstances. *See Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

### 1.    *Lee's right to bodily integrity*

"The right to personal security and to bodily integrity bears an impressive constitutional pedigree." *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 506 (6th Cir. 1996) (hereinafter "*Claiborne Cnty.*"). The Fifth Circuit recognized this right as early as 1981. *See Taylor ISD*, 15 F.3d at 450–51 (citing *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981)). Further, it has "long recognized" that sexual abuse by a state official violates this constitutional guarantee. *Tyson*, 42 F.4th at 517–18 (2022) (citing *Guidry*, 456 F.3d at 506 n.7 (2007); *Rains Cnty. ISD*, 66 F.3d at 1406 (1995); *Taylor ISD*, 15 F.3d at 450–51 (1994)).

Although courts must not survey clearly established rights at a high level of generality, *see al-Kidd*, 563 U.S. at 742, the need for particularity here is less acute because "the state has no interest in sexually abusing its citizens, [therefore] sexual abuse by a state official cannot be justified by any legitimate governmental objective." *Tyson*, 42 F.4th at 518; *see also Taylor ISD*, 15 F.3d at 452 ("Obviously, there is never any justification for sexually molesting a schoolchild, and thus, no state interest . . . which might support it."); *Whitley v. Hanna*, 726 F.3d 631, 650–51 (5th Cir. 2013) (Elrod, J., concurring) ("Sexual abuse by a state official is an undeniable violation of [the right to bodily integrity.]").

Even if there were not a series of cases holding that a government official's sexual abuse violates an individual's right to bodily integrity, the undersigned does not think such

22

explicit notice would be necessary for a reasonable person in McGuire's position to understand that her behavior was unconstitutional. As the Third Circuit put it:

> Intuitively, it seems absurd to analyze whether the right to be free from an officer's sexual assault was clearly established by case law at the time of Barger's conduct. This is because, given the egregiousness of Barger's violation of Kane's personal security and bodily integrity, the right here is so "obvious" that it could be deemed clearly established even without materially similar cases.

*Kane v. Barger*, 902 F.3d 185, 195 (3d Cir. 2018) (footnote omitted); *accord Claiborne Cnty.*, 103 F.3d at 506–07 ("If the 'right to bodily integrity' means anything, it certainly encompasses the right not to be sexually assaulted under color of law. This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible . . . .").

In sum, the undersigned finds that the facts construed in Lee's favor demonstrate that McGuire's actions violated his right to bodily integrity under the Fourteenth Amendment's Due Process Clause, that the law at the time these violations occurred clearly established that her behavior was unconstitutional, and that no reasonable mental health provider would have believed otherwise. Accordingly, the Court should deny her qualified immunity.

### 2.    *Lee's right to protection*

Beginning in *Taylor ISD*, the Fifth Circuit held that a supervisor's deliberate indifference towards a subordinate's sexual abuse of a private individual was itself a violation of the Fourteenth Amendment's substantive protections. 15 F.3d at 454. The Court

reaffirmed that holding in *Rains Cnty. ISD*. 66 F.3d at 1413–16. Both decisions involved students and school employees, and since these decisions, nearly every case involving claims of a supervisory official's failure to protect from sexual abuse has also occurred in the school context.

This lack of other fact patterns led Judge Elrod in 2013 to conclude that, although a law enforcement officer had violated a plaintiff's constitutional rights by "allow[ing] a fifty-five-year-old law enforcement official to engage in predictable, preventable, and yet repeated sexual assaults on a fifteen-year-old," the officer was nonetheless entitled to qualified immunity because the right at issue had not been clearly established. *Whitley*, 726 F.3d at 649, 655 (Elrod, J., concurring in judgment).

Judge Elrod's concurrence is significant for two reasons. First, her observation regarding the dearth of authority outside the school context in 2013 still holds true. The undersigned has not found cases outside the school context presenting facts similar to those here. Second, the fact that Judge Elrod concurred by itself further underscores that the law in this area remains unsettled. For these reasons, the undersigned cannot say Villa had fair notice that her actions violated clearly established law.

While the undersigned finds that Villa's actions violated Lee's constitutional right, because that right was not clearly established back in 2018, Villa is entitled to qualified immunity.

## VI. CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that the Court: (1) GRANT qualified immunity and summary judgment to Villa, Gutierrez, and Payne;

(2) GRANT summary judgment to WTC; (3) DENY qualified immunity and summary judgment to McGuire; and (4) LIFT the stay on discovery and enter a scheduling order governing further proceedings.

## VII. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VIII. TRANSFER OF CASE

Because the parties have not consented to the undersigned exercising the full jurisdiction of this Court, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1:20-CV-

00058-H.

ORDERED this 6th day of August 2024.

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE